Mark JACOBS, Plaintiff and Appellant,

v.

Wilford L. HAFEN and JoAnn B. Hafen, Defendants and Appellees.

No. 930023–CA.

Court of Appeals of Utah.

May 10, 1994.

Phillip L. Foremaster (argued), St. George, for plaintiff and appellant.

LeMar J. Winward (argued), St. George, for defendants and appellees.

Before BENCH, BILLINGS and DAVIS, JJ.

## OPINION

BENCH, Judge:

Appellant Mark Jacobs appeals from the trial court's judgment quieting title to property located in Kane County in Appellees, Wilford and JoAnn Hafen. We vacate and remand.

## FACTS

Jacobs is the legal owner of property located in Kane County (the "Jacobs property"). The Hafens are the legal owners of property located in Garfield County (the "Hafen property"). The Jacobs property abuts the Hafen property on the county line. An old fence running west to east bisects the Jacobs property approximately 360 feet south of the county line that separates the two properties. The fence runs east approximately 1,300 feet, and then north to the county line. The fence has existed for forty to fifty years, although during most of that time the two properties were in common ownership. No other fence or other demarcation is located on or near the boundary line between the two properties. There was evidence introduced at trial indicating that the property north of the fence has been used for livestock grazing continuously since 1952. Throughout their ownership of the property, the Hafens have grazed livestock on the Jacobs property north of the fence.

In November 1991, Jacobs brought this action against the Hafens to quiet his title to the portion of property located between the fence and the county line (the legal boundary between the respective properties). The Hafens raised several defenses, including boundary by acquiescence. The trial court found that the Jacobs and Hafen properties were in common ownership until separate ownership was established in 1973. The trial court further found that the parties or their predecessors had mutually acquiesced in the fence line as the property line for over eighteen years. The court held that the eighteen-year period was a sufficiently long period to satisfy the time element of boundary by acquiescence and quieted title in the Hafens. This appeal followed.

## ANALYSIS

The doctrine of boundary by acquiescence requires satisfaction of four elements: "(1) occupation up to a visible line marked by monuments, fences, or buildings, (2) mutual acquiescence in the line as a boundary, (3) for a long period of time, (4) by adjoining landowners." *Staker v. Ainsworth*, 785 P.2d 417, 420 (Utah 1990) (quoting *Goodman v. Wilkinson*, 629 P.2d 447, 448 (Utah 1981)). The trial court found that the fence was a visible line, that the adjacent landowners acquiesced in the fence as a boundary line, and that such acquiescence was for a sufficient period of time. Jacobs challenges both the trial court's determination that separate ownership of the properties arose in 1973, and its determination that eighteen years was a sufficiently long period to satisfy the time element of boundary by acquiescence.

### Separate Ownership

Until April 1973, the Jacobs and Hafen properties were in common ownership. On April 15, 1973, the owner of both parcels of property conveyed by warranty deed an undivided one-half interest in what is now the

Hafen property to two parties, thereby causing the two properties to come into separate ownership. Although the deed was not recorded until 1983, the two properties have been in separate ownership since 1973. The Hafens purchased their property in 1982, and Jacobs purchased his property in 1991.

Jacobs argues that the trial court erred in finding that the properties came into separate ownership in 1973. He urges that the properties did not come into separate ownership until 1983, the date the 1973 deed to the Hafen property was first recorded.

■ To successfully challenge a trial court's factual findings, "[a]n appellant must marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be 'against the clear weight of the evidence,' thus making them 'clearly erroneous.' " *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989) (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)). "If the appellant fails to marshal the evidence, the appellate court assumes that the record supports the findings of the trial court and proceeds to a review of the accuracy of the lower court's conclusions of law and the application of that law in the case." *Saunders v. Sharp*, 806 P.2d 198, 199 (Utah 1991). The trial court found that the Jacobs and Hafen properties have been owned separately since 1973. Jacobs has not marshaled the evidence in support of this finding. We therefore assume that the record supports this finding.

The trial court based its finding of separate ownership on the 1973 deed to the Hafen property, which was not recorded until 1983. Jacobs asserts that since there was no evidence presented at trial as to the date of delivery of the deed, the 1983 recording should be the operative date. We disagree.

■ In order for a deed to be operative, it must be delivered. *Wiggill v. Cheney*, 597 P.2d 1351, 1352 (Utah 1979). Utah Code Ann. § 57–4a–4(1)(d) (1990), provides, however, that a recorded deed creates the presumption that "delivery occurred notwithstanding any lapse of time between dates on the document and the date of recording."

*Id.; accord Barlow Soc'y v. Commercial Sec. Bank*, 723 P.2d 398, 400 (Utah 1986) (presumption of valid delivery arises where deed has been executed and recorded); *Baker v. Pattee*, 684 P.2d 632, 635 (Utah 1984) (same). This presumption may only be overcome by clear and convincing evidence that the deed was in fact not delivered. *Barlow*, 723 P.2d at 400; *Baker*, 684 P.2d at 635. Although the statutory presumption seems to be limited to the fact of delivery and not the date thereof, Jacobs presented no evidence that the date of delivery was different than the date on the deed. It was therefore legally permissible for the trial court to determine that the Jacobs and Hafen properties were in separate ownership since April 15, 1973. *See State v. Pena*, 869 P.2d 932, 936-940 (Utah 1994) (whether trial court operated within proper field of inquiry is determination we review nondeferentially); *accord State v. Barnhart*, 850 P.2d 473, 475 (Utah App.1993) (same).

### Duration of Separate Ownership

Jacobs argues that even if the 1973 date is used as the delivery date, only eighteen years passed between delivery and commencement of this action. He asserts that eighteen years is insufficient to satisfy the "long period of time" element of boundary by acquiescence.

■ Generally, in order to satisfy the time element of boundary by acquiescence, the boundary line must be acquiesced in by adjoining land owners for at least twenty years. *Hobson v. Panguitch Lake Corp.*, 530 P.2d 792, 795 (Utah 1975). In *Hobson*, the supreme court stated that "only under unusual circumstances would a [period of less than twenty years] be deemed sufficient." *Id.; accord Parsons v. Anderson*, 690 P.2d 535, 539 (Utah 1984) (period of fifteen years, absent unusual circumstances, not sufficient for boundary by acquiescence).

■ In the present case, the trial court held that the parties' acquiescence in the fence line for over eighteen years was a sufficient period of time to satisfy the time element of boundary by acquiescence. However, the only findings the trial court made

that even arguably might be construed as an unusual circumstance, are that three surveys were completed on the subject property after 1973, and that the respective owners took no action concerning the fence even though they knew the fence line was not the property line. These findings, standing alone, do not constitute an unusual circumstance sufficient to support the trial court's determination that eighteen years satisfied the time element of boundary by acquiescence.

Prior to 1984, the elements of boundary by acquiescence in Utah were the same as they are today. *See Staker*, 785 P.2d at 420. In 1984, however, the supreme court, in *Halladay v. Cluff*, 685 P.2d 500 (Utah 1984), added the additional requirement of "objective uncertainty" as to the actual boundary line.

> [T]he property line shown on the record title cannot be displaced by another boundary unless it is shown that during the period of acquiescence there was some objectively measurable circumstance in the record title or in the reasonably available survey information (or other technique by which record title information was located on the ground) that would have prevented a landowner, as a practical matter, from being reasonably certain about the true location of the boundary. By the same token, a claimant cannot assert boundary by acquiescence if he or his predecessors in title had reason to know the true location of the boundary during the period of acquiescence.

*Id.* at 505. Thus, under *Halladay*, the surveys conducted on the properties in the present case would have barred a claim of boundary by acquiescence. However, in 1990, the supreme court overruled the *Halladay* objective uncertainty requirement. *Staker*, 785 P.2d at 423–24. In *Staker*, the court concluded that the objective uncertainty requirement "further restricts what was already a restrictive doctrine, and 'effectively eliminate[s] boundary by acquiescence as a viable doctrine for settling property disputes in Utah.'" *Id.* at 423 (quoting *Recent Developments*, 1985 Utah L.Rev. 131, 194). Therefore, the requirements for boundary by acquiescence after *Staker* in 1990, are the same as they were prior to *Halladay* in 1984.

If the surveys alone were sufficient to constitute an unusual circumstance under *Hobson*, we would be taking what would have been a bar to boundary by acquiescence between 1984 and 1990, and converting it into a vehicle for shortening the period of time required for boundary by acquiescence after 1990. This result would potentially penalize landowners, as in the present case, who may have had surveys conducted to defeat potential boundary-by-acquiescence claims. We therefore conclude that the three surveys conducted in this case, standing alone, cannot constitute an unusual circumstance that would warrant shortening the time period for boundary by acquiescence.

■ Inasmuch as there are no other findings of unusual circumstances, we vacate the trial court's judgment quieting title in the Hafens, and remand for additional findings as to unusual circumstances. Of course, if the trial court cannot make findings of unusual circumstances, Jacobs would be entitled to a judgment quieting title in him. *See, e.g., State v. Starnes*, 841 P.2d 712, 716 (Utah App.1992) (remand not intended to be merely exercise in supporting and bolstering decision already reached); *Allred v. Allred*, 797 P.2d 1108, 1112 (Utah App.1990) (same).

## CONCLUSION

The trial court's finding that the Jacobs and Hafen properties were in separate ownership since 1973 is not clearly erroneous. It was legally permissible for the trial court to make this determination based on the 1973 deed. The trial court failed to adequately support its holding that eighteen years was a sufficient period of time for boundary by acquiescence. We therefore vacate the trial court's ruling quieting title in the Hafens, and remand for additional findings and judgment consistent therewith.

BILLINGS and DAVIS, JJ., concur.