Joan MATTES aka Joan Emmer,
Plaintiff and Respondent,

v.

David Lee OLEARAIN, Personal Repre-
sentative of Andrew Olearain,
deceased, Defendant and Appellant.

No. 880138–CA.

Court of Appeals of Utah.

Aug. 17, 1988.

Jerrald D. Conder (argued), West Valley City, for defendant and appellant.

Dwight L. King (argued), Dwight L. King & Associates, P.C., Salt Lake City, for plaintiff and respondent.

Before BENCH, GARFF and ORME, JJ.

BENCH, Judge:

Defendant appeals a trial court's judgment awarding certain property to plaintiff, under equitable principles, in a common-law marriage. We reverse in part and affirm in part.

Plaintiff Joan Mattes met Andrew Olearain in November 1983. At the time, plaintiff owned a home located at 4145 Barker Road in Taylorsville, Utah (Barker Road property). Andrew owned a home located at 1991 West Leisure Circle in Taylorsville, Utah (West Leisure Circle property), which was subject to a $10,000 equitable lien reserved in Andrew's former wife pursuant to their divorce decree. Andrew and plaintiff agreed to be married and, in January 1984, plaintiff moved into Andrew's home.[1] Andrew and plaintiff furnished his home with personal property each brought into the arrangement. They paid mortgages on both properties with funds from a joint account. In April 1984, Andrew designated plaintiff as the beneficiary of his life insurance policy. Plaintiff also designated Andrew as the beneficiary of her life insurance policies.

In November 1984, plaintiff, in order to avoid liens asserted by her former husband's creditors, deeded to Andrew all of her right, title, and interest in the Barker Road property. On the same date, Andrew's former wife quitclaimed all right, title, and interest she had in the West Leisure Circle property to Andrew and plaintiff.

Andrew died in a plane crash in February 1985. Defendant David Olearain was appointed personal representative of Andrew's estate. Plaintiff continued living in the West Leisure Circle home and paying the mortgages on both homes. Concerned about defendant's intentions regarding the two homes, plaintiff filed this action in April 1985. She alleged a marital relationship existed between Andrew and her. She claimed ownership of the Barker Road property and sought a determination as to her rights and interest in the West Leisure Circle property. Plaintiff also requested distribution of the personal property.

Trial was held in April 1986. In its findings, conclusions, and judgment dated June 10, 1986, the trial court found that although not "formally and legally completed," a common-law marriage relationship existed between plaintiff and Andrew. The court also found, however, that plaintiff was not Andrew's heir. The court concluded equitable principles should be applied to the marriage relationship and awarded plaintiff sole ownership of the Barker Road property, certain personal property, and a one-quarter undivided interest in and exclusive use and possession of the West Leisure Circle property. The court ordered plaintiff to pay the mortgage on the West Leisure Circle property and $150 rental per month to Andrew's estate. On appeal, defendant argues the trial court erred in awarding the real property to plaintiff.

Defendant argues the trial court erred in disregarding the deed from plaintiff to Andrew by awarding the Barker Road property to plaintiff. The trial court found the conveyance was part of a plan by Andrew and plaintiff "to place their properties in their joint names and arrange their affairs as husband and wife." Defendant rightly argues "a deed regular in form is presumed to convey the entire fee simple title...." *Jacobson v. Jacobson*, 557 P.2d 156, 158 (Utah 1976). Moreover, the gener-

---

1. No marriage license was ever obtained nor was an official ceremony or solemnization ever performed. Plaintiff claims they conducted their own private ceremony, exchanging vows and commitments to be married as husband and wife.

al rule is that parol evidence may not contradict, vary, or add to deeds. *Neeley v. Kelsch*, 600 P.2d 979 (Utah 1979). However, as we have stated, in equitable actions, "[p]arol evidence is admissible to show the purpose and intent of parties to a deed." *Smith v. Smith*, 738 P.2d 655, 657 (Utah App.1987) (quoting *Bown v. Loveland*, 678 P.2d 292, 297 (Utah 1984)).

■ At trial, defendant attempted to offer the testimony of Andrew's former wife, Judith Wright, as to statements made by Andrew regarding his relationship with plaintiff. Plaintiff objected on the ground of hearsay. Defendant argued the testimony was admissible under Utah R.Evid. 601(c). The trial court disagreed and sustained plaintiff's objection. Defendant then proffered that Judith would testify Andrew did not consider plaintiff to be his wife and that he, not plaintiff, owned the Barker Road property.

Rule 601(c) provides:

Statement of decedent offered in action against his estate.

(1) Evidence of a statement is not made inadmissible by the hearsay rule when offered in an action upon a claim or demand against the estate of the declarant if the statement was made upon the personal knowledge of the declarant at a time when the matter had been recently perceived by him and while his recollection was clear.
(2) Evidence of a statement is inadmissible under this section if the statement was made under circumstances such as to indicate its lack of trustworthiness.

We conclude the trial court erred in excluding Judith's testimony. The instant case is an action against Andrew's estate. Andrew's statements regarding his then current relationship with plaintiff were clearly made upon his personal knowledge and while his recollection was clear. Plaintiff offered no evidence to indicate a lack of trustworthiness. Furthermore, equity requires the admission of defendant's parol evidence regarding the couple's intentions in light of plaintiff's testimony about those intentions.

Notwithstanding the error in refusing to admit defendant's evidence as to the couple's intentions, plaintiff's own evidence does not support the Barker Road property award. At trial, plaintiff testified she conveyed the property to Andrew to avoid her former husband's creditors. On appeal, plaintiff argues the court imposed a constructive trust on the Barker Road property.

■ A constructive trust is an equitable remedy to prevent unjust enrichment in the absence of any express or implied intention to form a trust. *Matter of Estate of Hock*, 655 P.2d 1111 (Utah 1982). If the challenging party establishes a constructive trust by clear and convincing evidence, the trial court may alter a deed regular in form and presumed to convey clear title. *Ashton v. Ashton*, 733 P.2d 147 (Utah 1987). A constructive trust may be imposed if the grantee was in a confidential relationship with the grantor. *Parks v. Zions First Nat'l Bank*, 673 P.2d 590 (Utah 1983). "Where a confidential relationship exists, a presumption of unfairness arises . . . and the burden shifts to the defendant to prove absence of unfairness by a preponderance of the evidence." *Baker v. Pattee*, 684 P.2d 632, 636 (Utah 1984). *See also Estate of Jones v. Jones*, 759 P.2d 345 (Utah App.1988). Defendant argues plaintiff failed to prove the existence of a confidential relationship.

■ We do not dispute, nor does defendant, that plaintiff and Andrew enjoyed a relationship based on sincere affection, confidence, and trust. However, such characteristics alone do not establish a confidential relationship in its legal sense. *Blodgett v. Martsch*, 590 P.2d 298 (Utah 1978); *Bradbury v. Rasmussen*, 16 Utah 2d 378, 401 P.2d 710 (1965). Rather, as the Utah Supreme Court has held:

The doctrine of confidential relationship rests upon the principle of inequality between the parties, and implies a position of superiority occupied by one of the parties over the other.

*Webster v. Lehmer*, 742 P.2d 1203, 1206 (Utah 1987) (quoting *Bradbury*, 16 Utah 2d

at 383, 401 P.2d at 713). *See also Hiltsley v. Ryder*, 738 P.2d 1024, 1027 (Utah 1987) (Zimmerman, J., concurring) (must show facts indicating grantor's weakness and grantee's dominance); *Blodgett*, 590 P.2d at 302 (defendant could exercise extraordinary influence and was aware of plaintiff's reposed trust).

■ Plaintiff offered no evidence of her inequality with Andrew or dominance on the part of Andrew. On the contrary, her testimony indicated a relationship of equal roles, free of any potential undue influence. Furthermore, the trial court did not specifically find the existence of a confidential relationship. *See Nielson v. Rasmussen*, 558 P.2d 511 (Utah 1976) (finding is required that circumstances exist to warrant imposition of a constructive trust). We conclude the facts do not establish the existence of a confidential relationship between Andrew and plaintiff.

In *Barlow Society v. Commercial Security Bank*, 723 P.2d 398, 401 (Utah 1986), the Utah Supreme Court held, "Absent fraud, duress, mistake, or the like attributable to the grantee, a competent grantor will not be permitted to attack or impeach his own deed." Plaintiff testified she signed the deed of her own will, free of fraud, trick, or threat. She alleged no mistake. As we find no basis to disregard plaintiff's deed to Andrew, the award of the Barker Road property to plaintiff is reversed.

■ Defendant next argues the trial court erred in awarding plaintiff a one-quarter interest in, and exclusive possession of, the West Leisure Circle property. The trial court found that the deed from Andrew's former wife to plaintiff and Andrew created in plaintiff an undivided one-quarter interest in said property. In the divorce decree between Andrew and his former wife, the trial court awarded the West Leisure Circle property to Andrew as his sole and separate property, subject to a $10,000 equity interest in favor of his former wife. Andrew paid his former wife the $10,000. Therefore, in an effort to memorialize satisfaction of the equitable lien, Andrew's former wife conveyed by quitclaim deed her interest in the West Leisure Circle property to plaintiff and Andrew.

"A grantee under a quitclaim deed acquires only the interest of [her] grantor 'be that interest what it may.'" *Barlow*, 723 P.2d at 400 (quoting *Nix v. Tooele County*, 101 Utah 84, 118 P.2d 376 (1941)). Andrew's former wife had no legal title or interest in the property; therefore, plaintiff took no legal title or interest. Plaintiff only took a portion of a satisfied or extinguished equity interest, or, in reality, no interest at all. The trial court's award to plaintiff of the one-quarter interest and exclusive use and possession of the West Leisure Circle property was, therefore, clearly erroneous and is reversed.

Plaintiff claims the provisions of Utah Code Ann. § 30–1–17.2 (1984) support the trial court's conclusions and cites *Edgar v. Wagner*, 572 P.2d 405 (Utah 1977), and *Maple v. Maple*, 566 P.2d 1229 (Utah 1977), in support of her position. Section 30–1–17.2 falls under Utah Code Ann. § 30–1–17 (1984) which states:

When there is doubt as to the validity of a marriage, either party may, in a court of equity in a county where either party is domiciled, demand its avoidance or affirmance.... The judgment in the action shall either declare the marriage valid or annulled and shall be conclusive upon all persons concerned with the marriage.

Section 30–1–17.2 then provides:

If the parties have accumulated any property or acquired any obligations subsequent to the marriage, or there is a genuine need arising from economic change of circumstances due to the marriage, ... the court may make temporary and final orders, and subsequently modify the orders, relating to ... their property ... as may be equitable.

■ These statutory provisions do not apply in the instant case. Plaintiff harbored no legitimate doubt as to the validity of her "marriage" to Andrew. She knew the marriage was invalid. Plaintiff testified she and Andrew did not obtain a marriage license and that their relationship

was not legally solemnized. At the time of trial, the legislature did not recognize common-law marriages.[2] Marriages not solemnized by an authorized person were prohibited and declared void. Utah Code Ann. § 30–1–2(3) (1984); *In re Vetas' Estate*, 110 Utah 187, 170 P.2d 183 (1946). *See also* Utah Code Ann. § 30–1–7 (1988) ("No marriage may be solemnized without a license....").

*Maple* and *Edgar* are distinguishable. In *Maple*, the trial court annulled the marriage between defendant and plaintiff, a native citizen of Thailand. The Utah Supreme Court affirmed, under the provisions of section 30–1–17.2, the trial court's award of $1,200 to plaintiff to allow her and her son to return to her homeland. In *Edgar*, plaintiff married defendant knowing he was already married. After several years, the parties separated and plaintiff filed an action to partition their house and defendant's business assets. Plaintiff filed a second action alleging a void marriage. The trial court found for plaintiff based expressly on a contract theory as pled by the parties, rather than equitable principles under section 30–1–17.2 and *Maple*.

We conclude that the equitable provisions of section 30–1–17.2 do not apply in the instant case. To hold otherwise would legitimate a knowing common-law relationship the legislature had expressly declared invalid.

Defendant last argues the trial court erred in awarding plaintiff certain items of personal property defendant claims belong to Andrew's estate. We believe the evidence is sufficient to support ownership by plaintiff. We therefore affirm the personal property distribution.

The judgment regarding the Barker Road and West Leisure Circle properties is reversed. The two properties are awarded to defendant as personal representative of the estate of Andrew Olearain. The distri-

bution of personal property is affirmed. No costs awarded.

GARFF, J., concurs.

ORME, Judge: (concurring).

Despite the harshness of the result,[1] I concur in Judge Bench's opinion.

In so doing, I wish to note that, although the "constructive trust" doctrine has been argued by the parties, the "resulting trust" concept actually seems more applicable. "The resulting trust is a kind of implied-in-fact trust, that is to say, it is imposed because as a matter of circumstantial evidence some such arrangement seems to have been intended by the parties, though they did not express their intent in words." D. Dobbs, Remedies § 4.3 at 241 (1973). According to one case, a resulting trust is often said to be limited to three situations: "(a) The failure of an express trust; (b) the full performance of an express trust without exhausting the trust estate; and (c) the payment of the purchase price of property by one who directs that title be taken in the name of another." *Belton v. Buesing*, 240 Or. 399, 402 P.2d 98, 101 n. 4 (1965). The third kind of resulting trust, the so-called "purchase money resulting trust," was recently found by our Supreme Court to be the proper basis for a trial court's disposition, although the trial court couched its judgment in terms of a constructive trust. *See Matter of Estate of Hock*, 655 P.2d 1111, 1114 (Utah 1982). Even though the parties did not raise the "resulting trust" angle below and have not argued it here, if the court's judgment as to the Barker Road property could, as in *Hock*, be affirmed on "resulting trust" grounds, it would be appropriate for us to affirm. *See, e.g., Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 894–95 (Utah 1988).

Although, as noted, there has been a tendency to view just three specific situations as giving rise to a resulting trust, I tend to agree with the *Belton* court that the doctrine should not be so confined.

---

2. Utah Code Ann. § 30–1–4.5, enacted in 1987, now recognizes marriages not solemnized as legal and valid, provided the trial court makes requisite findings.

1. The harshness is somewhat ameliorated by the fact that plaintiff received substantial life insurance benefits upon Andrew's death. Her entitlement thereto has not been challenged.

"Rather, we would find a resulting trust wherever the circumstances surrounding the disposition of property raise an inference, not rebutted, that the transferor does not intend that the person taking or holding the property, or a third person, should have the beneficial interest therein." *Belton v. Buesing*, 402 P.2d at 101 n. 4. I also agree with *Belton* that a "resulting trust may arise where a conveyance is made without any consideration, [if] it appears from the circumstances that the grantee was not intended to take beneficially." *Id.*

If the trial court accepted plaintiff's claim that she conveyed the Barker Road property to Andrew to avoid liens asserted by her former husband's creditors, and if it appeared no beneficial interest in Andrew was intended, it might be proper to find a resulting trust.[2]

However, that result is not possible here. The court found the conveyance was pursuant to a plan by plaintiff and Andrew to acquire joint ownership of their previously separate property. While execution of the plan was perhaps flawed, the plan specifically contemplated each party's acquisition of a beneficial interest in the other's property. Moreover, Andrew's intended beneficial interest in the Barker Road property is shown by the fact that he shared in the rental income derived from the property.

Relying all but exclusively on her claim of de facto marriage, plaintiff did not advance theories of partnership or mutual mistake. Evidence was not introduced with those theories in mind and the record as it exists does not permit affirmance on those grounds. While such theories may or may not have been availing in this case, this case—and the unsuccessful search it prompts for some legal basis on which to affirm the trial court's equitable decision—shows the Legislature's wisdom in enacting Utah Code Ann. § 30–1–4.5 (1987).[3] Had that statute been in effect at the relevant time, the trial court's judgment would be entitled to affirmance, a result which is, regrettably, not possible in this case.

2. Of course, the resulting trust doctrine is an equitable one. If plaintiff's ex-husband's creditor's claims were valid ones and properly enforceable against the Barker Road property, plaintiff's conveyance to Andrew would be in fraud of those creditors and her "unclean hands" might well preclude application of the doctrine for her benefit.

3. Section 30–1–4.5 provides:
(1) A marriage which is not solemnized according to this chapter shall be legal and valid if a court or administrative order establishes that it arises out of a contract between two consenting parties who:
(a) are capable of giving consent;
(b) are legally capable of entering a solemnized marriage under the provisions of this chapter;
(c) have cohabited;
(d) mutually assume marital rights, duties, and obligations; and
(e) who hold themselves out as and have acquired a uniform and general reputation as husband and wife.
(2) The determination or establishment of a marriage under this section must occur during the relationship described in Subsection (1), or within one year following the termination of that relationship. Evidence of a marriage recognizable under this section may be manifested in any form, and may be proved under the same general rules of evidence as facts in other cases.